### Merwin *against* Shailer and others.

The master of a vessel is not the general agent of the owners; but his authority is limited to the objects and purposes of the voyage. He can bind his owners personally, or hypothecate the vessel, only for repairs or supplies necessary for the prosecution of the voyage, or the safety of the vessel; and it is incumbent on the lender of money to the master, for these purposes, in an action against the owners, to show the necessity of the loan.

*A,* the master of a vessel, bound from *New-York* to *Apalachicola,* was obliged, by stress of weather, to put into *Charleston* for repairs and supplies, the vessel being in a leaky condition. On the 29th of *August, A* procured 420 dollars for these purposes, by a loan on bottomry from *C.* Between that time and the 7th of *October, B* was appointed master in the place of *A,* with no other authority to bind the owners, than that which is implied in the relation of master and owners. On the day last-mentioned, *B* borrowed of *D* 420 dollars, with which he took up the bottomry bond to *C;* and immediately afterwards, he, with the vessel, left *Charleston,* on the voyage homeward. In an action brought by *D* against the owners, to recover the money so loaned, it was held, that the defendants were not liable; such change of responsibility not growing out of the necessities of the voyage or the safety of the vessel.—[One judge dissenting.]

This was an action of *assumpsit* for moneys laid out and expended, by the plaintiff, for the use of the defendants, as owners of the schooner *Middlesex.*

The cause was tried, on the general issue, closed to the court, at an adjourned term of the superior court, held at *Middletown,* in *April,* 1843.

The defendants, residing at *Haddam,* in this state, were owners of the schooner *Middlesex,* a vessel belonging to the port of *Haddam,* and employed in the coasting trade between sundry ports in the *United States;* of which vessel *John Nabb* was the master. Being on her outward voyage from *New-York* to *Apalachicola,* in consequence of damage sustained by her, by stress of weather, between the ports of *Charleston* in *South-Carolina* and *Apalachicola,* and to prevent a total loss, she was obliged to, and did, put into the port of *St. Josephs* in *Florida,* whereby the master was prevented from receiving the freights of the voyage; and it not being practicable to obtain the necessary repairs to make the vessel sea-worthy in that port, the master, to obtain such repairs, returned with her, in ballast, in a leaky condition, to the port of *Charleston;* being bound back to the port of *Wilmington,* in *North-Carolina,* and thence to the port of *New-York,*

there to end her voyage.  While she was in the port of *Charleston*, in need of repairs, her crew threatening to libel her for wages due to them, and the master without funds, either of the owners or his own, and unable to obtain them on the personal credit of the owners, in order to procure such repairs and pay such wages, it was agreed between the master and *Robert A. Long*, of *Charleston*, that *Long* would loan to the master, for the benefit of the owners, sufficient money to pay the wages of the crew, and procure the necessary repairs; and that the master would hypothecate to *Long*, for his security, said vessel, with her hull, tackle and apparel, and the freight to be earned until the end of the voyage at *New-York*; which money was accordingly loaned and advanced by *Long* to the master, amounting to the sum of 420 dollars, and repairs were therewith made, to the same amount.   In pursuance of said agreement, the master, on the 29th of *August*, 1839, executed and delivered to *Long* an instrument of which the following is a synopsis.   After a recital of the circumstances, which induced the necessity of the master's borrowing the sum of 420 dollars, (such circumstances being substantially the same as those above stated,) and the advance of that sum, by *Long*, to the master, *Long* agreed to bear the hazard thereof on the hull or body of the said schooner, during her voyage from *Charleston* to *New-York*, whether she should touch at *Wilmington* or not, so as it should not exceed one calendar month from the date of her departure from *Charleston :* and *Nabb*, on his part, covenanted and agreed, that said schooner should, with the first fair wind after she should have undergone such necessary repairs as to make her sea-worthy, set sail and depart from the port of *Charleston*, and proceed to the port of *New-York*, (either directly or by the way of *Wilmington*,) the dangers and casualties of the seas excepted.   The instrument then proceeded thus : " And I, the said *John Nabb*, for and in consideration of the sum of 420 dollars, to me in hand paid, by the said *Robert A. Long*, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, do hereby bind myself, my executors and administrators, and particularly said schooner *Middlesex*, with her hull, tackle and apparel, and the freight to be earned until the end of the voyage at *New-York*, to pay unto the said *Long*, his executors, administrators or

*Middlesex,*
July, 1844.

Merwin
*v.*
Shailer.

assigns, said sum of 420 dollars, within ten days after the safe arrival of said schooner in the harbour of *New-York,* together with one and quarter *per cent. per* month, marine interest, in respect to the adventure aforesaid, accounting from the date of these presents.

" And I, the said *John Nabb,* further covenant as aforesaid, that said schooner, in terminating her said voyage from *Charleston* to *New-York,* shall not sail or apply unto any other ports or places than those herein before mentioned, unless he shall be necessitated thereto, by extremity of weather, or other unavoidable accident or circumstance.

" Provided always, nevertheless, and it is the true intent and meaning of these presents, that if said schooner, before the termination of said voyage, shall happen to be lost, miscarry, or be taken by men of war or pirates, then this present writing or deed, and every covenant, payment, matter and thing therein contained, on the part of me, the said *John Nabb,* to be done, paid and performed, shall be void and of none effect ; and that then, I, the said *John Nabb,* my executors and administrators, shall not be anywise chargeable or liable to pay the said sum of money, or any part thereof, to said *Long,* his executors, &c., but that he and they are to use the same, and every part thereof, both principal and interest, any thing herein before contained to the contrary notwithstanding.

" And it is further provided, and specially agreed, by and between the said parties to these presents, that should said *John Nabb,* at any time before the expiration of one month from the date of these presents, or before said schooner leaves the port of *Charleston,* obtain, by draft on the owners or otherwise, and pay over to said *Long,* said sum of 420 dollars, with legal interest from the date of these presents, then he, the said *Long,* shall deliver up this deed to be cancelled, relinquish his lien on said schooner, and give a discharge in full for that amount to said *John Nabb,* his executors, &c. and accept payment as aforesaid, with legal interest, in lieu of this his lien bearing marine interest.

" And I, the said *John Nabb,* do hereby covenant and agree with the said *Long,* his executors, &c. that I, the said *John Nabb,* at the time of sealing and delivering these presents, am the true and lawful master of said schooner *Middlesex,* and

have power to charge and engage her as aforesaid; and that said schooner shall, at all times after her arrival in *New-York* as aforesaid, be liable and chargeable for said sum of 420 dollars, with marine interest as aforesaid, unless the same should be paid, with legal interest, before the departure of said schooner from *Charleston*, or within one month from the date of these presents.

"In testimony whereof, I, the said *John Nabb*, have hereunto set my hand and seal, at *Charleston*, this 29th day of *August*, 1839. *John Nabb*."

This instrument was duly acknowledged, by said *John Nabb*, to be his act and deed, before a notary public, residing in *Charleston*, on the day of its date.

The vessel in question remained in the port of *Charleston*, until the 7th of *October*, 1839. In the meantime, *Nabb* had ceased to be master, and *Titus Tyler* had been duly appointed master, in his place. On the day last-mentioned, *Tyler*, as such master, borrowed, in behalf of the owners, of the plaintiff in this suit, the sum of 420 dollars, for the purpose of paying to *Long* the sum due to him for moneys so loaned by him, and liberating the vessel and her freight from the hypothecation created by said instrument. With this money, *Tyler* immediately afterwards paid to *Long* the sum so due to him, and took up and cancelled said instrument.

Neither of the masters of the vessel had any other authority from the owners for the acts so done by them respectively, than what is implied from the relation subsisting between them of master and owners of the vessel; and no express promise was ever made by the defendants, to the plaintiff, to pay him. The entire amount so loaned by him remains unpaid. There was no other necessity or occasion for borrowing the money, than that above stated.

The question as to what judgment should be rendered upon these facts, was reserved for the advice of this court.

The case was argued, in 1843, by *Barnes* and *Clark*, for the plaintiff, and by *Baldwin* and *Bulkley*, for the defendants. After consultation by the judges, it was continued to the present term, when it was argued again, by *Hungerford* and *Clark* for the plaintiff, and by the same counsel for the defendants.

The counsel for the plaintiff contended, 1. That the bottomry bond given by *Nabb*, as master of the schooner *Middlesex*, to *Long*, was a valid bond.

In the first place, the master of a vessel has a right, for necessary repairs and supplies, when necessity requires it to be done, to hypothecate the vessel on bottomry, *in a foreign port*. 1 *Pet. Adm. Dec. append*. 5. *Laws of Oleron, art*. 1. *Id*. 72. *Laws of Wisbuy, art*. 13. *Id*. 97. *Laws of Hanse Towns, art*. 3. & seq. 2 *Pet. Adm. Dec. append*. 8. *art*. 19. *Marine Ordinances of Louis* 14. *Abbott on Shipp*. 172. (*Story's* ed. 1810.) 3 *Kent's Com*. 133. *Hussie* v. *Christie*, 13 *Ves*. 599. *Fontaine* v. *Columbian Insurance Company*, 9 *Johns. R*. 29. *The Virgin*, 8 *Pet*. 538.

Secondly, the master, in cases of necessity, may hypothecate the vessel, as well in the port of *another state* from that in which the owners reside, as in a foreign country. 3 *Kent's Com*. 299. 300. *La Ysabel*, 1 *Dods*. 273. *Selden* v. *Hendrickson*, 1 *Brock*. 396. *Hussie* v. *Christie*, 13 *Ves*. 599.

Thirdly, an *apparent necessity*, in the absence of collusion, is all that is requisite to protect the party lending upon bottomry. *The Ship Fortitude*, 3 *Sumn*. 228.

Fourthly, under the head of necessary repairs, supplies, &c. the law includes not only what is absolutely indispensable, but such things as are *reasonably fit and proper*, under the circumstances *Abbott on Shipp*. 143. §3. 3 *Sumn*. 237. 245, 6.

2. That another loan on bottomry, made for the purpose of satisfying the bond given to *Long*, would have been good. Such a substitution would not affect the validity of the security. *Blaine* v. *Ship Charles Carter*, 4 *Cranch* 328. *The Aurora*, 1 *Wheat*. 96.

3. That independently of any bottomry bond, the master of a vessel has a right, in a foreign port, or in the port of another state, for necessary repairs and supplies, to bind the owners, by his contracts; and also, for similar purposes, to borrow money, and pledge the *personal credit* of the owners. *Abbott on Shipp*. 172. § 23. 3 *Kent's Com*. 124. 133. *Ingersoll* v. *Van Bokkelin*, 7 *Cowen*, 670. It is, indeed, the *first duty* of the master to take up the money, on the personal credit of the owners; a bottomry bond being the last resort.

4. That the money advanced by the plaintiff to *Tyler*, being

*Middlesex,*
*July, 1844.*

*Merwin*
*v.*
*Shailer.*

in place of that advanced by *Long* to *Nabb*, while the vessel remained in the same port, and under the same exigencies, the plaintiff's claim is as binding upon the owners, as *Long's* was upon the vessel. By the terms of the bottomry bond, *Nabb* had a right, before the vessel left *Charleston*, to repay the money and take up the bond. Might he not do this on the credit of the owners? But *Tyler* succeeded to all *Nabb's* powers.

5. That this money having been advanced to the agent of the defendants, at his request, and applied to the benefit of the defendants, they are liable at common law, as for money laid out and expended for their use, or for money had and received by them to the plaintiff's use. There is a strong equity in his favour. *Hawkes* v. *Saunders, Cowp.* 290.

The counsel for the defendants contended, 1. That the master's power to borrow money on the credit of the owners, is a *qualified* power, existing only in case of *necessity*, in order to prosecute the voyage, which must be shewn. There is no presumption in favour of its existence; but the burden of proof rests on him who asserts it. 3 *Kent's Com.* 125. 131, 2. 300. *Cary* v. *White*, 5 *Bro. Parl. Ca.* 325. (*Toml.* ed.) S. C. cited *Abbott on Shipp.* 145. § 7. (*Story's* ed.) *Reade* v. *Commercial Insurance Company*, 3 *Johns. R.* 352. *Tunno* v. *Ship Mary, Bee's Adm. R.* 120. *Boreal* v. *Golden Rose, Id.* 131. *Putnam* v. *Schooner Polly, Id.* 157. 159. *Liebart* v. *Ship Emperor, Id.* 339. 344. *Canizares* v. *Brigantine Santissima Trinidad, Id.* 353. *Cupisino* v. *Perez*, 2 *Dal.* 194.

2. That there was no such necessity, at the time the plaintiff advanced the money in question to Capt. *Tyler*. This was on the 7th of *October*, the day the vessel left the port of *Charleston*, after the former master had obtained on bottomry a sufficient sum of money to make the necessary repairs. The necessity of repairs had ceased, and the vessel was ready to prosecute her voyage. For this purpose it was not necessary to take up the bottomry bond; nor does it appear that the owners wished it taken up, or that their interest required this to be done. It bound the vessel and her freight, if she returned in safety; but it gave no personal remedy against the owners.

*Middlesex*, July, 1844.

Merwin *v.* Shailer.

3. That *Tyler* had no authority, express or implied, to borrow money on the credit of the owners. The finding of the court negatives all express authority. Had he any implied authority? The master, by virtue of his office, is the agent of the owners, first, in matters relating to the usual employment of the vessel; and secondly, in relation to the means of employing it. Neither the payment of this bond, nor the borrowing of money for that purpose, was in the exercise of any such agency. The owners appointed *Tyler* master, simply to navigate the vessel on her return home. They delegated no power to him to judge for them whether the continuance of the lien on the vessel was less beneficial to them, than a loan to extinguish it on their personal security. They may well say, " We appointed him to navigate the vessel, knowing that she had every thing needful for the voyage. We selected him for his skill as a navigator; we had confidence in him, in that capacity; but we had no confidence in his judgment or responsibility, as our general agent."

The case is totally unlike that which would exist, if more supplies had been necessary, which could not be procured, without a new hypothecation; which might furnish a reason for including the old bond in the new loan.

The authority claimed is a dangerous one. If the plaintiff had a right of action against the owners, by reason of the loan to Capt. *Tyler*, to take up the bottomry bond, his right accrued the moment the loan was made. He was not obliged to see to the application of the money, but to the necessity only. If, therefore, Capt. *Tyler* had misapplied the money, and had not taken up the bottomry bond, he might have returned home with the schooner still subject to the lien, and the owners liable for an equal amount for the new loan, and with no other recourse for their indemnity, than to a dishonest and insolvent master.

CHURCH, J. The principles which must govern this case, are well settled; indeed, they are conceded. Their application to the facts before us, furnishes the only ground of dispute.

The master of a vessel is not the general agent of the owners; his authority is limited to the objects and purposes of the voyage. He can bind his owners personally, or can hypoth-

*Middlesex,*
*July,* 1844.
_____
Merwin
*v.*
Shailer.

ecate the ship, only for repairs or supplies necessary for the prosecution of the voyage, or the safety of the vessel ; and for these objects he may borrow money.   But so careful is the law to protect owners, that it is incumbent upon the lender of money to a master of a vessel, in an action against the owner, to show the necessity of the loan.   *Cary* v, *White,* 5 *Bro. Parl. Ca.* 325. (*Toml.* ed.)   *Webster* v. *Seekamp,* 4 *Barn. & Ald.* 352. (6 *E. C. L.* 450.)   *The Aurora,* 1 *Wheat.* 96.   3 *Kent's Com.* 131.   *Story on Agency,* § 119.

The hypothecation of the vessel, by Capt. *Nabb,* was probably both prudent and necessary ; and by this act, the necessities of the voyage were provided for, and nothing remained to be done, but to put the vessel and crew in readiness to return home.   Capt. *Nabb* had bound himself, by no stipulations in the bottomry bond, by which he or his successor was obliged to redeem the vessel from the pledge, although he reserved a power to do this.

The money advanced by the plaintiffs to Capt. *Tyler,* was not borrowed for the use of the vessel or the voyage, but only to cancel the bottomry bond; and what necessity there was for this, and whether the necessity was connected with the voyage or not, does not appear.   The hypothecation of the schooner was complete, and all the rights and liabilities, by reason of it, had attached, before Capt. *Tyler* succeeded to the command ; and she could have proceeded on her voyage homeward, unmolested, and at the risk of *Long,* the holder of the bottomry bond.

We discover no more right in Capt. *Tyler* to take up this money upon the personal credit of the defendants, under these circumstances, than he would have had, if the owners, instead of Capt. *Nabb,* had hypothecated the vessel; or if he had borrowed it to redeem other vessels of his owners, under the charge of other masters.   He might, by such an operation, have promoted the interests of his employers ; but this would have been a manifest departure from his powers.   In the present instance, Capt. *Tyler* volunteered to change the entire responsibilities of the owners, and without any cause growing out of the necessities of the voyage, or the safety of the vessel. He relieved them from the payment of marine interest ; but instead of it, he cast upon them the entire risk of the voyage home ; which, to the extent of the money loaned upon bot-

tomry, had been assumed by *Long ;* and he attempted to substitute a personal liability, which did not exist before. We know of no principle or authority, which will approve of this proceeding ; and therefore, we advise that judgment be rendered for the defendants.

In this opinion, WILLIAMS, Ch. J., and STORRS and HINMAN, Js. concurred.

WAITE, J. To justify the master of a ship in giving a bottomry bond, it must not appear that the necessary supplies could be procured, upon any reasonable terms, with the credit of the owner, independent of such hypothecation. *The Aurora,* 1 *Wheat.* 96. A contract for the payment of marine interest, with the pledge given in such bond, is considered more unfavourable to the owner, than a simple loan of money upon his personal credit.

Such being the law, I cannot perceive how the master, in this case, was acting beyond the scope of his authority, in giving such a bond, with a stipulation contained in it, that the money loaned upon the bond might be repaid, with legal interest, before the departure of the vessel from the port where the supplies were furnished. They might be convenient for the purpose of giving him time to raise the necessary funds upon the personal credit of the owner.

The plaintiff, having advanced these funds to cancel the bond, in my view, stood in the same situation as if the funds had been directly applied in procuring the necessaries for the vessel. No injustice is done to the defendants, by this course, as they are called upon to pay no more than what was necessary for the vessel, with the legal interest.

A bottomry bond, given to pay off another bond of that kind, may be valid, if the former was so. *The Aurora, ubi sup.* The same principle applies to the case under consideration. It seems to me, that upon the facts presented to us in this case, the plaintiff is entitled to recover. The defendants have had the benefit of his money ; and justice and equity require, that they should repay it.

Judgment for defendants.